1

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    BRIAN DION LEWIS,                      No.  2:23-cv-01221 WBS SCR P

11              Plaintiff,

12       v.                                  ORDER

13    M. HARROD, et al.,

14              Defendants.

15

16        Plaintiff is incarcerated in state prison and proceeding pro se and in forma pauperis with a

17   civil rights action under 42 U.S.C. § 1983.  Plaintiff's second amended complaint ("SAC") is

18   before the undersigned for screening un 28 U.S.C. § 1915A.  (ECF No. 24.)  For the reasons set

19   forth below, the undersigned finds the SAC states a cognizable First Amendment mail

20   interference claim against defendants Harrod and L.G., and a cognizable First Amendment free

21   exercise claim against defendants Speers and Jones, but no other cognizable claims.  Plaintiff has

22   the option of proceeding on his cognizable claims or filing a third amended complaint.

23                              **STATUTORY SCREENING**

24        The court is required to screen complaints brought by prisoners seeking relief against "a

25   governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In

26   performing this screening function, the court must dismiss any claim that "(1) is frivolous,

27   malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief

28   from a defendant who is immune from such relief."  Id. § 1915A(b).  A claim is legally frivolous

1    when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325

2    (1989).  The court may dismiss a claim as frivolous if it is based on an indisputably meritless

3    legal theory or factual contentions that are baseless.  Neitzke, 490 U.S. at 327.  The critical

4    inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and

5    factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

6          In order to avoid dismissal for failure to state a claim a complaint must contain more than

7    "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

8    of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words,

9    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

10   statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

11   court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

12   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

13   inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When

14   considering whether a complaint states a claim, the court must accept the allegations as true,

15   Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most

16   favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

17                                      **PLAINTIFF'S SAC**

18         The facts underlying the SAC occurred at the three state prisons, Corcoran State Prison

19   ("CSP"), Pelican Bay State Prison ("PBSP"), and High Desert State Prison ("HDSP").  (ECF No.

20   24 at 1.)  The SAC names eight total defendants: (1) M. Harrod, mailroom official at HDSP; (2) J.

21   Speers, C.M.R., Religious Administration at HDSP; (3) P. Villa, Correctional Officer ("C/O") at

22   CSP; (4) J. Reyes, Sergeant at CSP; (5) Jones, C/O at HDSP; (6) L.G., mailroom designee at

23   PBSP; (7) C. Sandoval, C/O at PBSP; and (8) A. Tidwell, C/O at PBSP.  (Id. at 2-3.)

24         **I.      Interference with Paralegal Course Materials**

25         Plaintiff alleges that the scantron bubble test sheets from his Blackstone Career Institute

26   courses were removed from their outgoing, self-addressed envelopes and confiscated in the CSP

27   mailroom.  Plaintiff paid $826.00 tuition to become a certified paralegal through the program.

28   But Elaine Smith, student service advisor, told plaintiff that his tests never arrived.  (ECF No. 24

at 4.)  Other incarcerated persons at CSP Plaintiff corresponded with Blackstone without incident.  (Id. at 7.)  The complaint identifies the designated CSP mailroom official as "L.G."  (Id. at 2, 7.)

Plaintiff was transferred to HDSP on July 29, 2022.  (ECF No. 24 at 4.)  He immediately resubmitted his tests to Blackstone, which did not reach their destination.  Plaintiff alleges that defendant M. Harrod was the designated mailroom person at HDSP during that time.  (Id.)  Plaintiff later sent in handwritten answers that did arrive, but they could not be computed.  (Id.)

## II.    Religious Meal Issues

Plaintiff alleges that in 2019 while at PBSP, he filed a grievance about access to religious meals in interviews with nondefendant C.M.R. Losocco.  (ECF No. 24 at 8.)  The prison Imam told plaintiff that he had been accepted.  Plaintiff then transferred to CSP around September 2021.  On November 17, 2021, PBSP C.M.R. Losocco denied plaintiff's application.[1]  (Id. at 9.) Plaintiff then went on an 18-day hunger strike.  His kosher meals were then reinstated.  (Id.)

Plaintiff transferred to HDSP on July 29, 2022.  (ECF No. 24 at 11.)  On August 4, 2022, his religious meals were again revoked.  The Jewish Chaplain told plaintiff that defendant C.M.R. Speers had claimed plaintiff violated the program and should be removed.  Plaintiff continued to receive his meals for the next six months until one breakfast when plaintiff received a half pint of milk as he normally did.  Defendant Jones claimed plaintiff violated the program by taking the milk.  (Id.)  Three weeks after Jones claimed plaintiff violated the program, plaintiff received a violation sheet from the Chaplain that said defendant Speers had removed plaintiff from the religious meals program.  (Id.)

## III.    Retaliation for Sexual Assault Complaint

On March 15, 2021, plaintiff filed an administrative complaint within PBSP for employee sexual assault on A. Tidwell and C. Sandoval.  (ECF No. 24 at 5.)  Plaintiff alleges the mail interference and religious discrimination discussed above were retaliation for this complaint.  Plaintiff also alleges that had no "115 infractions" prior to the complaint but then received three write-ups over the four months after filing the complaint against Tidwell and Sandoval.  The

---

[1]  The complaint later states that it was defendants Villa and Reyes cancelled his religious meals at CSP.  (ECF No. 24 at 10.)

1   complaint mentions a write-up "immediately" after the complaint against Tidwell and Sandoval

2   and another on May 12, 2021.  (Id. at 5.)

3        The SAC discusses in detail the incident that occurred on July 10, 2021.  (ECF No. 24 at

4   12-16.)  That day, at PBSP, plaintiff was handcuffed for escort to the shower.  A C/O Galvan

5   placed a lock grip on plaintiff's index and middle finger that caused cuts and swelling to

6   plaintiff's hand.  (Id. at 13-14.)  Plaintiff asked Galvan to try not to scrape or him with the cuffs.

7   Galvan responded, "I'm doing my job, don't make me hurt you."  Plaintiff responded, "Go ahead

8   and hurt me."  (Id. at 14.)  Galvan's partner, C/O Baxter, then deployed OC spray to the left side

9   of plaintiff's face, causing breathing difficulties and injuries to plaintiff's tongue and left eye.

10  (14)  Plaintiff claims this was staged in retaliation for his complaint against Tidwell and Sandoval

11  and notes Sandoval worked as a rover in the same building.  (Id. at 5, 16.)

12                              **LEGAL STANDARDS**

13  **I.    42 U.S.C. § 1983**

14       A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights,

15  privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity,

16  including a municipality, acting under the color of state law.  42 U.S.C. § 1983.  To state a claim

17  under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law

18  (2) deprived plaintiff of rights secured by the Constitution or federal statutes.  Benavidez v.

19  County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

20  **II.    Linkage**

21       To state a claim for relief under § 1983, plaintiff must link each named defendant with

22  some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.  See

23  Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S.

24  362, 370-71 (1976).  Plaintiff may demonstrate that connection by alleging facts showing: (1) a

25  defendant's "personal involvement in the constitutional deprivation," or (2) that a defendant set

26  "in motion a series of acts by others" or "knowingly refus[ed] terminate a series of acts by

27  others, which [the defendant] knew or reasonably should have known would cause others to

28  inflict a constitutional injury."  Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation

                                          4

1    marks and citation omitted).

2                                **DISCUSSION**

3    **I.      First Amendment Mail Interference**

4            Plaintiff's first claim alleges defendants Harrod and L.G. violated his First and Fourteenth

5    Amendment rights by confiscating his Blackstone test exams during his incarceration at CSP and

6    HDSP.  Incarcerated persons have a "first Amendment right to send and receive mail" subject to

7    prison regulations that are "reasonably related to legitimate penological interests."  Witherow v.

8    Paff, 52 F.3d 264, 265 (9th Cir. 1995) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)) (per

9    curiam).  "When a prison regulation affects outgoing mail as opposed to incoming mail, there

10   must be a 'closer fit between the regulation and the purpose it serves.'"  Id. at 265 (quoting

11   Thornburgh v. Abbott, 490 U.S. 401, 412 (1989)).

12          The undersigned finds that plaintiff's SAC states cognizable mail interference claims

13   against defendants Harrod and L.G.  Liberally construed, the SAC plausibly alleges that

14   plaintiff's outgoing test sheets were withheld, which in turn prevented his completion of a course

15   that he paid $826.00 for.  Further, plaintiff's identification of defendants Harrod and L.G. as the

16   designated mailroom officials at HDSP and CSP, respectively, minimally supports the reasonable

17   inference of their personal participation in the allegation constitutional violation.

18          Moreover, at this early stage of the proceedings, the undersigned cannot adequately

19   consider the Turner factors referenced above.  See Barrett v. Belleque, 544 F.3d 1060, 1062 (9th

20   Cir. 2008) (district court "not in a position to decide, on the pleadings, whether [prison's] rules

21   'further an important or substantial government interest,' or impose limitations 'no greater than is

22   necessary.'" (citations omitted)).  While defendants may ultimately be able to put forward

23   legitimate penological reasons for their actions, the undersigned does not expect plaintiff to know

24   these reasons at this time.  Accordingly, plaintiff's complaint states a cognizable First

25   Amendment mail interference claim against defendants Harrod and L.G.

26          Plaintiff is advised that while the complaint states a cognizable claim against defendant

27   L.G., the U.S. Marshal Service will not be able to effect service without L.G.'s full name.  For

28   this reason, the undersigned cannot order service on defendant L.G. "until plaintiff obtains their

                                         5

1   real name through discovery and seeks leave to amend the complaint to add them as a defendant."

2   Leonard v. Denny, No. 2:12-cv-0915 TLN AC P, 2016 WL 43550, at *4 (E.D. Cal. Jan. 5, 2016),

3   report and recommendation adopted, No. 2:12-cv-0915 TLN AC P, 2016 WL 1267753 (E.D. Cal.

4   Mar. 31, 2016).

5   **II.     First Amendment Free Exercise of Religion**

6          Incarcerated persons "retain protections afforded by the First Amendment, including its

7   directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz,

8   482 U.S. 342, 348 (1987) (citation omitted).  To state a claim under the Free Exercise Clause, an

9   inmate must plausibly allege a prison official's actions (a) substantially burdened the inmate's

10  exercise of a sincerely held religious belief; and (b) did so in an unreasonable manner.  See

11  O'Lone, 482 U.S. at 348-50; Jones v. Williams, 791 F.3d 1023, 1031-32 (9th Cir. 2015).  A

12  prison official's refusal to provide a kosher meat diet to a Muslim inmate can implicate the Free

13  Exercise Clause.  See Shakur v. Schriro, 514 F.3d 878, 885 (9th Cir. 2008).

14         Plaintiff adequately alleges a First Amendment free exercise claim against defendants

15  Speers and Jones.  The SAC contains sufficient facts to show that Jones' alleged false accusation

16  of violating the religious meal program, and Speers' subsequent removal of plaintiff from the

17  program, substantially burdened plaintiff's right to practice his religion.

18         However, the SAC does not state a cognizable free exercise claim against defendants

19  Reyes and Villa.  It states in passing that Reyes and Villa cancelled plaintiff's religious meals at

20  CSP but provides no further factual support.  These types of conclusory allegations are not

21  sufficient to survive screening.  See Iqbal, 556 U.S. at 678.  Accordingly, for screening purposes,

22  the undersigned finds plaintiff has stated a cognizable First Amendment right to free exercise

23  claim against defendants Speers and Jones only.

24  **III.    First Amendment Retaliation**

25         "Within the prison context, a viable claim of First Amendment retaliation entails five

26  basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

27  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

28  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

1    correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations and

2    footnote omitted).

3         Plaintiff's third claim alleges several retaliatory punishments in response to his sexual

4    assault complaint against defendants Sandoval and Tidwell.  Plaintiff's filing of the sexual assault

5    complaint was a protected activity under the First Amendment.  <u>See</u> <u>Rhodes</u>, 408 F.3d at 567.

6    But as explained below, even assuming the various write-ups and other alleged punishments

7    plaintiff received afterwards constitute adverse actions, the SAC does not plausibly allege a

8    retaliatory motive by any defendant.

9         Plaintiff emphasizes that he did not receive any write-ups until filing the complaint and

10   then received three in quick succession.  But that alone does not support an inference of

11   retaliation.  "A retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*,

12   literally, 'after this, therefore because of this.'"  <u>Huskey v. City of San Jose</u>, 204 F.3d 893, 899

13   (9th Cir. 2000).  Instead, to establish causation, a plaintiff must show that his protected conduct

14   was "the substantial or motivating factor behind the defendant's conduct."  <u>Brodheim v. Cry</u>, 584

15   F.3d 1262, 1271 (9th Cir. 2009) (internal quotations and citations omitted).  The only alleged

16   connection between the sexual assault complaint and the use of force incident on July 10, 2021, is

17   that Sandoval, Galvan, and Baxter allegedly worked in the same building.  The SAC does not

18   allege that Galvan and Baxter knew Sandoval or were aware of plaintiff's sexual assault

19   complaint.  "[M]ere speculation that defendants acted out of retaliation is not sufficient."  <u>Wood</u>

20   <u>v. Yordy</u>, 753 F.3d 899, 905 (9th Cir. 2014); <u>see</u> <u>also</u> <u>Castaneda v. CDCR</u>, 2018 WL 11474352,

21   at *4 (E.D. Cal. Jan. 23, 2018) (screening out retaliation claim where complaint did not allege that

22   the defendants responsible for adverse transfer were aware of plaintiff's protected activities).

23        Plaintiff similarly alleges that the interference with his mail by defendants Harrod and

24   L.G., as well as the denial of his religious meals by defendants Speers, Jones, Reyes, and Villa,

25   was retaliation for his complaint against Sandoval and Tidwell.  But again, the SAC does not

26   plausibly allege that any of these defendants were aware of his sexual assault complaint.  Some of

27   the alleged constitutional violations, such as Harrod's alleged mail interference, occurred at

28   different state prisons altogether.  Finally, while plaintiff appears to allege retaliation by Sandoval

1   and Tidwell themselves, the SAC does not allege their personal involvement in any of the alleged

2   adverse actions.  Accordingly, because the complaint does not plausibly allege a retaliatory

3   motive behind any of write-ups or other adverse actions, the SAC does not state any cognizable

4   retaliation claims.

5                          **OPTIONS FROM WHICH TO CHOOSE**

6             After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that

7   plaintiff has adequately stated a valid First Amendment mail interference claim against

8   defendants Harrod and L.G., and a First Amendment free exercise claim against defendants

9   Speers and Jones.  However, the SAC does not state any cognizable First Amendment retaliation

10  claims.  There are no facts from which to infer any defendant acted against plaintiff because of

11  his protected sexual assault complaint.

12            It appears to the court that plaintiff may be able to allege facts to fix these problems.

13  Therefore, plaintiff has the option of either proceeding on his cognizable First Amendment

14  retaliation and free exercise claims or filing a third amended complaint.  After selecting an option

15  from the two options listed below, plaintiff must return the attached Notice of Election form to

16  the court within thirty (30) days from the date of this order.

17            **Option No. 1:** The first option available to plaintiff is to proceed immediately against

18  defendant Harrod on the First Amendment mail interference claim and against defendants Speers

19  and Jones on the First Amendment free exercise claim.  By choosing this option, plaintiff will be

20  agreeing to voluntarily dismiss his First Amendment retaliation claim and defendants Villa,

21  Reyes, Sandoval, and Tidwell.  The court will proceed to immediately serve the complaint and

22  order a response from defendants Harrod, Speers, and Jones.  **The court will not order service**

23  **on L.G. until plaintiff identifies their real name through discovery and seeks leave to amend**

24  **the complaint to add their real name.**

25            **Option No. 2:**  The second option available to plaintiff is to file an amended complaint to

26  fix the problems described above regarding his First Amendment retaliation complaint.  If

27  plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff

28  time to file an amended complaint.

If plaintiff chooses to file an amended complaint, he is advised to consider the legal standards provided above regarding his different First Amendment claims. Plaintiff must also demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo, 423 U.S. at 370-71. Also, the complaint must specifically identify how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court will not refer to a prior pleading in order to make his amended complaint complete. See Local Rule 220. This is because, as a general rule, an amended complaint replaces the prior complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012). Therefore, in an amended complaint, every claim and every defendant must be included.

**PLAIN LANGUAGE SUMMARY FOR PARTY PROCEEDING WITHOUT A LAWYER**

Some of the allegations in the second amended complaint state claims against the defendants and some do not. The second amended complaint states a First Amendment mail interference claim against defendants Harrod and L.G., and a First Amendment free exercise claim against defendants Speers and Jones. However, it does not allege a First Amendment retaliation claim against any defendant. Plaintiff claims he was written up for making a sexual assault complaint, but there are no allegations that the defendants who wrote him up knew about his sexual assault complaint.

You have a choice to make. You may either (1) proceed immediately on your First Amendment mail interference claim against Harrod and your First Amendment free exercise claim against Speers and Jones and voluntarily dismiss the other claims; or (2) try to amend the complaint. The court cannot serve defendant L.G. until you obtain their name their discovery and amend the complaint to add their real name. Pay particular attention to the legal standards given

1   above if you choose to file an amended complaint.

2                                    **CONCLUSION**

3          In accordance with the above, IT IS HEREBY ORDERED that:

4          1.  Plaintiff's First Amendment retaliation claim and claims against defendants Sandoval,

5   Tidwell, Villa, and Reyes do not state claims for which relief can be granted.

6          2.  Plaintiff has the option to proceed immediately on his First Amendment mail

7   interference claim against defendant Harrod and his First Amendment free exercise claims against

8   defendants Speers and Jones as set forth above, or to file an amended complaint.

9          3.  Within thirty (30) days from the date of this order, plaintiff shall complete and return

10  the attached Notice of Election form notifying the court whether he wants to proceed on the

11  screened complaint or whether he wants to file an amended complaint.

12         4.  If plaintiff does not return the form, the court will assume that he is choosing to

13  proceed on the complaint as screened and will recommend dismissal without prejudice of his First

14  Amendment retaliation claim and defendants Sandoval, Tidwell, Reyes, and Villa.

15  DATED: October 28, 2025

16

17

18                                          SEAN C. RIORDAN
                                            UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

                                              10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN DION LEWIS,

          Plaintiff,

    v.

M. HARROD, et al.,

          Defendants.

No.  2:23-cv-01221 SCR P

NOTICE OF ELECTION

    Check one:

_____ Plaintiff wants to proceed immediately against defendant Harrod on the First Amendment mail interference claim and defendants Speers and Jones on the First Amendment free exercise claim without amending.  Plaintiff understands that by choosing this option, he agrees to voluntarily dismiss his First Amendment retaliation claim and defendants Villa, Reyes, Sandoval, and Tidwell under Federal Rule of Civil Procedure 41(a).

_____ Plaintiff wants time to file an amended complaint.

DATED:_____

                                    _____
                                      Brian Dion Lewis, Plaintiff pro se

1